UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

SHANA LEE MCCART-POLLAK,

                Plaintiff,

vs.

BRETT SAEVITZON, *et al.*,

                Defendants.

Case No.: 2:20-cv-01624-GMN-MDC

**ORDER DENYING MOTION FOR SUMMARY JUDGMENT**

Pending before the Court is the Motion for Summary Judgment, (ECF No. 265), filed by Defendants Brett Saevitzon and Craig Shandler. Plaintiff Shana Lee McCart-Pollak filed a Response, (ECF No. 274), to which Defendants filed a Reply, (ECF No. 276). For the reasons discussed below, the Court DENIES Defendants' Motion for Summary Judgment.

Also pending before the Court is the Request for Judicial Notice, (ECF No. 266), filed by Defendants, which the Court construes as a Motion for Judicial Notice. Plaintiff filed a Response, (ECF No. 271), and Defendants did not file a Reply. Because the Court can take judicial notice of another court's documents, the Court GRANTS the Request for Judicial Notice.[1]

---

[1] Defendants request that the Court take judicial notice of certain documents and orders filed in the Trademark Suit, 2:15-cv-01576-MMD-EJY. A court may take judicial notice of a fact that is "not subject to reasonable dispute" in that the fact "(1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Judicial opinions and other court records are properly subject to judicial notice. *Lee v. City of Los Angeles*, 250 F.3d 668, 689–90 (9th Cir. 2001), *abrogated on other grounds as stated in Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002). Specifically, the Court may judicially notice the existence of another court's decision—which includes the stated reasoning of the authoring court as well as the date of the decision—and other filings made in the case, but not the facts recited in that decision or other filings. *Id.* Thus, the Court takes judicial notice of the court documents and orders themselves, but not the facts within them.

## I. BACKGROUND

This case stems from an earlier case filed in this District, 2:15-cv-01576-MMD-EJY (the "Trademark Suit"). (Fifth Am. Compl. ("FAC") 1:20–21, ECF No. 213). In that case, On Demand Direct Response, LLC, and On Demand Direct Response III, LLC, (the "On Demand parties"),[2] sued Plaintiff to prevent her from "engaging in an Internet and social media campaign targeting their product—the CloudPets stuffed animal—and its related mark." (Order Denying Mot. Dismiss 2:1–6, ECF No. 191 in Trademark Suit). Plaintiff asserted counterclaims and third-party claims, alleging that "several parties stole her idea for Bluetooth Low Energy-enabled stuffed animals that would allow family members to exchange messages with children." (Order Granting Mot. Summ. J. 1:15–17, ECF No. 406 in Trademark Suit).

In the Trademark Suit, Judge Du entered default judgment in favor of Plaintiff on her counterclaims against the On Demand parties on June 20, 2018. (Order Entering Default J. 2:16–19, ECF No. 362 in Trademark Suit). The default judgment was later amended to reflect the damages Plaintiff was entitled to. (Am. Default J., ECF No. 466 in Trademark Suit).

Plaintiff initiated the present lawsuit on August 28, 2020, alleging malicious prosecution and abuse of process relating to the Trademark Suit. (Compl., ECF No. 1). Her complaint has gone through many iterations, with the operative being her Fifth Amended Complaint ("FAC"). Plaintiff's FAC alleges three causes of action: (1) Alter Ego/Piercing the Veil; (2) Abuse of Process; and (3) Intentional Infliction of Emotional Distress ("IIED"). Defendants move for summary judgment on all three claims.

## II. LEGAL STANDARD

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

---

[2] The On Demand parties were originally named as Defendants in this action but have since been terminated. (Clerk's Entry of Default, ECF No. 22).

affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.* "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968)). "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citation and quotation marks omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be

1  denied, and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–60 (1970).

3  If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). However, the nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts," *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th Cir. 2002). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252. In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

20  At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

## III. DISCUSSION

Defendants move for summary judgment on all of Plaintiff's claims: alter ego/piercing the veil, abuse of process, and IIED. The Court addresses each claim in turn.

### A. Alter Ego/Piercing the Veil

Defendants argue that Plaintiff's alter ego/piercing the veil claim is time-barred, and as such, the Court should grant summary judgment. (Mot. Summ. J. 11:2–3, ECF No. 265). Nevada Revised Statutes ("NRS") 11.220 provides: "An action for relief, not hereinbefore provided for, must be commenced within [four] years after the cause of action shall have accrued, regardless of whether the underlying cause of action is analogous to that of any other cause of action with a statute of limitations expressly prescribed by law." Because there is no specific statute of limitations for an "Alter Ego" cause of action, Plaintiff had four years to bring her claim.

Defendants argue that "Plaintiff knew of the identities of the Defendants and their involvement and/or management of the [On Demand parties] more than [four] years before filing her Complaint in this action." (Mot. Summ. J. 10:1–3). To support this argument, Defendants cite screenshots of social media posts made by Plaintiff prior to August 17, 2015. In these screenshots, username @ShanaLee1972 (Lolbuddies) directed a post to Defendant Saevitzon saying, "@bsaevitzon1 ignoring the situation is only going to make everyone louder! #Cloudpets stole lotsoflovebuddies.com." (Trademark Suit Compl. ¶ 40, Ex. A to Mot. Judicial Notice, ECF No. 266-1). Moreover, Defendants cite screenshots of social media posts made by Plaintiff's niece directed to Defendant Shandler stating, "@craigshandler You may want to know that @CloudPets is based on a stolen ide[a]. Lotsoflovebuddies.com." (*Id.*). Plaintiff's niece also directed a social media post to Defendant Saevitzon stating "@bsaevitzon1 Did you know that #CloudPets is a stolen idea? Look at this mom's evidence. Lotsoflovebuddies.com." (*Id.*).

To further support their argument, Defendants cite court documents filed by Plaintiff in the Trademark Suit.  In a Response to a Motion for Order to Show Cause, Plaintiff includes in an exhibit a photo of Defendants and writes "On Demand Global does the marketing at direct response for CLOUDPETS." (CloudPet Connection to Harrington at 35, Ex. N. to Opp. Mot. Show Cause, ECF No. 18-13 in Trademark Suit).  Plaintiff then writes, "These are the top two executives at On Demand Global.  The left is Craig Shandler (in another section of this website you will see his son Samuel Shandler who also worked for On Demand Global and now works for Spiral Toys who [does] CLOUDPETS).  The second picture is Brett Saevitzon." (*Id.*)  Defendants also argue that in a hearing in the Trademark Suit, "Plaintiff specifically referred to Craig Shandler as one of the [Demand Parties] founders." (Mot. Summ. J. 9:22–23).  Indeed, at the hearing Plaintiff said ". . . [t]here is Samuel Shandler that works for On Demand or did work for On Demand.  He now works for Spiral Toy's.  He's actually the son of Craig Shandler, who is one of the cofounders." (Hr'g Tr. 109:23–110:1, Ex. D to Mot. Judicial Notice, ECF No. 266-4).

Lastly, Defendants argue that one of this Court's previous Orders bolsters their claim that Plaintiff's alter ego claim is time-barred.  As the Court has previously explained to Defendants, "this Court's prior Order adopting the Magistrate Judge's ruling [does not] demonstrate that Plaintiff's Alter Ego claim is time barred." (Order Den. Mot. Dismiss 5:17–18, ECF No. 230).  Accordingly, the Court is still unpersuaded by this argument.

Defendants' first two arguments, relating to social media posts by Plaintiff and her niece, and Plaintiff's courtroom statement, establish that they have met their initial burden of establishing that Plaintiff likely knew of Defendants' involvement with the On Demand parties more than four years before asserting her alter ego claim.  The burden now shifts to Plaintiff to establish that a genuine issue of material fact exists.

1  Plaintiff argues that a genuine dispute of material fact exists as to whether Plaintiff had any knowledge of Defendants' involvement and/or management of the On Demand parties. (Opp. to Mot. Summ. J. 3:14–15, ECF No. 274). Plaintiff contends that neither the social media posts, nor her statements in court or court documents, directly name the On Demand parties—On Demand Direct Response, LLC and On Demand Direct Response III, LLC—but instead only prove that she knew of Defendants' connection to On Demand Global, a separate entity from the On Demand parties. (*Id.* 4:1–4). Plaintiff testifies that she did not know of the involvement and/or management of either Defendant with the On Demand parties prior to August 17, 2015, as Defendants assert. (McCart-Pollak Decl. ¶¶ 2–5, Ex. A to Opp. to Mot. Summ. J., ECF No. 274-1). To support this claim, Plaintiff testifies that Defendants' biographies on the On Demand Global website do not mention the On Demand parties, nor do Defendants' LinkedIn pages. (*Id*. ¶¶ 8–20).

Plaintiff next explains that her in-court statements and written statements in court documents were taken out of context by Defendants. Plaintiff draws the Court's attention to her Response to a Motion for Order to Show Cause in the Trademark Suit, wherein Plaintiff specifically referenced On Demand Global and the Defendants' connection to that entity, not the On Demand parties. (Opp. to Mot. Summ. J. 4:5–11); (CloudPet Connection to Harrington at 35, Ex. N. to Resp. Mot. Show Cause in Trademark Suit). Moreover, Plaintiff testifies that in the hearing, she was referring to On Demand Global when she said that "Samuel Shandler [who] works for On Demand or did work for On Demand works for Spiral Toys. He is actually the son of Craig Shandler, who is one of co-founders." (Opp. to Mot. Summ. J. 5:4–6); (McCart-Pollak Decl. ¶ 28, Ex. A to Opp. to Mot. Summ. J). Thus, Plaintiff has put forth specific facts by producing competent evidence that shows a genuine issue for trial as to whether her alter ego claim is time barred. Accordingly, summary judgment for this claim is **DENIED**.

Because Defendants do not set forth an argument as to the merits of the alter ego claim, the Court will now move to Plaintiff's abuse of process claim.

### B. Abuse of Process

Defendants contend that Plaintiff cannot establish a cause of action for abuse of process because the claims they asserted against Plaintiff in the Trademark Suit were "legitimate and that the case against Plaintiff, no matter the result, was a reasonable and good faith use of the legal process." (Mot. Summ. J. 12:22–26). Defendants argue that their complaint filed in the Trademark Suit "provides the Court with a more than sufficient basis" to enter summary judgment for Defendants as to the abuse of process claim. (*Id.* 12:23).

In Nevada, the elements of an abuse of process claim are "(1) an ulterior purpose by the defendants other than resolving a legal dispute, and (2) a willful act in the use of the legal process not proper in the regular conduct of the proceeding." *LaMantia v. Redisi,* 38 P.3d 877, 879 (Nev. 2002). "An ulterior purpose is any improper motive underlying the issuance of legal process." *Posadas v. City of Reno,* 851 P.2d 438, 445 (Nev. 1993). It is not necessary to show malice or want of probable cause to recover for abuse of process. *Id.* Under Nevada law, the filing of a complaint itself does not constitute an abuse of process. *Laxalt v. McClatchy,* 622 F. Supp. 737, 752 (D. Nev. 1985). Rather, it is "the action[ ] which the [filer takes] (or fail[s] to take) *after* the filing of the complaint" that constitutes abuse of process. *Id.* (emphasis in original). "[T]he gist of the tort [of abuse of process] is . . . misusing or misapplying process justified in itself for an end other than that which it was designed to accomplish." *Id.* at 751 n. 3 (quoting Prosser, *Law of Torts* 856 (4th ed. 1971)); *see also Nev. Credit Rating Bureau, Inc. v. Williams,* 503 P.2d 9, 12 (Nev. 1972) ("The action for abuse of process hinges on the *misuse* of regularly issued process . . .") (emphasis added).

Defendants solely rely on their assertion that their complaint was filed in good faith and set forth cognizable claims against Plaintiff in the Trademark Suit to argue that Plaintiff's abuse

of process claim fails. However, case law makes clear that the filing of a complaint itself does not constitute an abuse of process. *Laxalt,* 622 F. Supp. at 752. Rather, it is the action which the filer takes or fails to take *after* the filing of the complaint that constitutes abuse of process. *Id.* Defendants set forth no arguments regarding the events that transpired after the filing of their complaint in the Trademark Suit. As such, Defendants fail to present any evidence to negate an essential element of Plaintiff's abuse of process claim; and they do not demonstrate that Plaintiff failed to make a showing sufficient to establish an element essential to her claim on which she will bear the burden of proof at trial. Therefore, Defendants fail to meet their initial burden as to this claim and summary judgment is **DENIED**.

### C. IIED

Lastly, Defendants argue that Plaintiff cannot establish that their actions were extreme and outrageous, and that she did not suffer extreme or severe emotional distress because she received a monetary judgment in her favor in the Trademark Suit. (*See generally* Mot. Summ. J. 13:13–15:19).

To establish a prima facie claim of IIED in Nevada, Plaintiff must prove: "(1) extreme and outrageous conduct on the part of the defendant; (2) intent to cause emotional distress or reckless disregard for causing emotional distress; (3) that the plaintiff actually suffered extreme or severe emotional distress; and (4) causation." *Blige v. Terry*, 540 P.3d 421, 432 (Nev. 2023). Extreme and outrageous conduct is that which is "outside all possible bounds of decency and is regarded as utterly intolerable in a civilized community." *Maduike v. Agency Rent–A–Car*, 953 P.2d 24, 26 (Nev. 1998) (internal quotation marks and citation omitted). "Severe or extreme emotional distress" is distress "so severe and of such intensity that no reasonable person could be expected to endure it." *Alam v. Reno Hilton Corp.*, 819 F. Supp. 905, 911 (D. Nev. 1993).

To begin, "[t]he failure of a moving party to file points and authorities in support of the motion constitutes a consent to the denial of the motion." LR 7-2. Apart from the black-letter

law of an IIED claim, Defendants offer no case law to defend their arguments with. (*See* Mot. Summ. J. 13:13–15:19). Nor do they cite to the record of evidence to bolster their claims. (*See id.*). The Court finds Defendants' arguments asserted with a lack of legal authority and evidence unconvincing.

First, Defendants argue that Plaintiff's assumption that Defendants took and profited from her intellectual property "hardly rises to the level of extreme or outrageous conduct needed to support an [IIED] claim." (*Id.* 14:17–19). Defendants rely on their presumption that Plaintiff's alter ego claim is time-barred to argue that if even such a taking did occur, "that taking and/or profiting was done by the [On Demand parties] and not these Defendants." (*Id.* 14:21–22); (Reply 6:6–8, ECF No. 276). However, as the Court concluded above, there exists a genuine dispute of material fact as to whether the alter ego claim is time-barred. Thus, the Court is not persuaded by this argument.

Defendants next argue that the On Demand parties "had a good faith basis to assert their claims against Plaintiff in the appropriate legal forum in order to address the improper conduct of Plaintiff in defaming the [On Demand parties]" and that "the filing of a legitimate lawsuit cannot form the basis for an emotional distress claim." (Mot. Summ. J. 14:23–15:1). However, the Court has previously explained to Defendants that "Plaintiff's claim is not based solely on the fact that she was sued," and as such is not persuaded by this argument either. (Order Den. Mot. Dismiss 9:3, ECF No. 230).

Defendants then argue that "the fact that [the on Demand parties] discontinued the product in controversy also fails to form a basis for this claim." (Mot. Summ. J. 15:23–15:1). Defendants explain that Plaintiff's assertion that the sales of the allegedly stolen product idea caused her emotional distress, and her claim that the On Demand parties' decision to cease sales caused her emotional distress, cannot both be true. (*Id.* 15:7–9). Lastly, Defendants argue that "[the On Demand parties] failure to prosecute the Trademark Suit fails to support any

claim for emotional distress." (*Id.* 15:10–11). Defendants contend that Plaintiff could not have suffered emotional distress from the lawsuit and the On Demand Parties' failure to prosecute it because Plaintiff obtained a $537,097.92 judgment in her favor. (*Id.* 15:10–17). Defendants offer no legal authority or evidence for why the Court should declare summary judgment in their favor. They merely offer conclusory allegations. Accordingly, Defendants have failed to meet their burden at this stage in the proceedings and summary judgment is **DENIED** for this claim as well.

IV.   **CONCLUSION**

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment, (ECF No. 265), is **DENIED.**

**IT IS FURTHER ORDERED** that Defendants' Request for Judicial Notice, (ECF No. 266), is **GRANTED**.

**IT IS FURTHER ORDERED** that the parties shall have thirty days from the date of this Order to file a jointly proposed pretrial order pursuant to LR 16-3(b) using the form provided in LR 16-4.

**DATED** this __14__ day of January, 2025.

_____
Gloria M. Navarro, District Judge
United States District Court