UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| SHANA LEE MCCART-POLLAK,<br><br>           Plaintiff,<br>vs.<br><br>BRETT SAEVITZON, *et al.*,<br><br>           Defendants. | Case No.: 2:20-cv-01624-GMN-MDC<br><br>**ORDER GRANTING SUMMARY JUDGMENT TO DEFENDANTS** |

Pending before the Court is the Court ordered Supplemental Brief, (ECF No. 344), filed by Defendants Brett Saevitzon and Craig Shandler. Also pending before the Court is the Court ordered Supplemental Brief, (ECF No. 345), filed by Plaintiff Shana Lee McCart-Pollak. For the reasons discussed below, the Court GRANTS summary judgment in favor of Defendants.

**I.   BACKGROUND**

This case stems from an earlier case filed in this District, 2:15-cv-01576-MMD-EJY (the "Trademark Suit"). (Fifth Am. Compl. ("FAC") 1:20–21, ECF No. 213). In that case, On Demand Direct Response, LLC, and On Demand Direct Response III, LLC, (the "On Demand parties"),[1] sued Plaintiff to prevent her from "engaging in an Internet and social media campaign targeting their product—the CloudPets stuffed animal—and its related mark." (Order Denying Mot. Dismiss 2:1–6, ECF No. 191 in Trademark Suit). Plaintiff asserted counterclaims and third-party claims, alleging that "several parties stole her idea for Bluetooth Low Energy-enabled stuffed animals that would allow family members to exchange messages with children." (Order Granting Mot. Summ. J. 1:15–17, ECF No. 406 in Trademark Suit).

---

[1] The On Demand parties were originally named as Defendants in this action but have since been terminated. (Clerk's Entry of Default, ECF No. 22).

In the Trademark Suit, Judge Du entered default judgment in favor of Plaintiff on her counterclaims against the On Demand parties on June 20, 2018. (Order Entering Default J. 2:16–19, ECF No. 362 in Trademark Suit). The default judgment was later amended to reflect the damages Plaintiff was entitled to. (Am. Default J., ECF No. 466 in Trademark Suit).

Plaintiff initiated the present lawsuit on August 28, 2020, alleging malicious prosecution and abuse of process relating to the Trademark Suit. (Compl., ECF No. 1). Her complaint has gone through many iterations, with the operative being her Fifth Amended Complaint. Plaintiff's FAC alleges three causes of action against Defendants: (1) Alter Ego/Piercing the Veil; (2) Abuse of Process; and (3) Intentional Infliction of Emotional Distress ("IIED"). Defendants moved for summary judgment on all three claims and the Court denied summary judgment. (*See generally* Summ. J. Order, ECF No. 291).

After the Court entered its Order denying summary judgment, it *sua sponte* ordered supplemental briefing. (*See* Order Directing Suppl. Br., ECF No. 333). The Court ordered the parties to brief their respective positions on the following topics not addressed in Defendants' Motion for Summary Judgment:

- The merits of Plaintiff's alter ego/piercing the veil claim.
- What events transpired after the filing of Defendants' complaint in the Trademark Suit that do or do not support Plaintiff's abuse of process claim?
- The merits of Plaintiff's IIED claim.

Plaintiff and Defendants filed their supplemental briefs which the Court effectively treats as supplements to Defendants' original Motion for Summary Judgment and Plaintiff's Response because Defendants' supplemental brief argues that Plaintiff's claims fail as a matter of law, and Plaintiff's argues that her claims have merit and/or that genuine disputes of material facts exist. (*See generally* Defs.' Suppl. Br., ECF No. 344); (*see also* Pl.'s Suppl. Br., ECF No.

345). Accordingly, the Court applies the legal standard for summary adjudication to the supplemental briefing.

## II.  LEGAL STANDARD

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.* "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968)).  "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008).  A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis.  "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citation and quotation marks omitted).  In contrast, when the nonmoving party bears the burden of proving

the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 323–24.  If the moving party fails to meet its initial burden, summary judgment must be denied, and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  However, the nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts," *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th Cir. 2002).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.  In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

### III. DISCUSSION

Defendants argue Plaintiff's claims fail as a matter of law, while Plaintiff argues her claims have merit and/or there are genuine disputes of material facts. The Court addresses each claim in turn based on the information provided in the parties' supplemental briefs.

#### A. Alter Ego/Piercing the Veil

The Court previously found that there is a genuine dispute of material fact as to whether Plaintiff's alter ego/piercing the veil claim is time barred. (Summ. J. Order 7:22–25). However, because Defendants did not set forth an argument as to the merits of the alter ego claim, the Court did not address them in its Order denying summary judgment. (*Id.* 8:1–2). The parties have now briefed the merits of this claim which the Court addresses below.

Typically, "no person other than the limited-liability company is individually liable for a debt or liability of the limited-liability company unless the person acts as the alter ego of the limited-liability company." Nev. Rev. Stat. 86.376. A person acts as the alter ego of a limited-liability company only if: (a) "The limited-liability company is influenced and governed by the person"; (b) "There is such unity of interest and ownership that the limited-liability company and the person are inseparable from each other"; and (c) "Adherence to the notion of the limited-liability company being an entity separate from the person would sanction fraud or promote manifest injustice." *Id.* "The question of whether a person acts as the alter ego of a limited-liability company must be determined by the court as a matter of law." *Id.*

The Nevada Supreme Court recently clarified that "the alter ego analysis for a limited liability company is the same as the analysis that is applied to determine whether an alter ego relationship exists with respect to a corporation." *Ene v. Graham*, 546 P.3d 1232, 1234 (Nev. 2024). Therefore, Nevada caselaw analyzing the alter ego doctrine for corporations "remains instructive" when analyzing the application of the doctrine to an LLC. *Id.* at 1236. "[I]t should be emphasized that '[t]he [LLC] cloak is not lightly thrown aside' and that the alter ego doctrine is an exception to the general rule recognizing [LLC] independence." *LFC Mktg. Grp., Inc. v. Loomis*, 8 P.3d 841, 846 (Nev. 2000) (quoting *Baer v. Amos J. Walker, Inc.*, 452 P.2d 916, 916 (Nev. 1969). The Court begins with the first part of the Nevada alter ego test.

**1. Whether the LLC is Influenced and Governed by Defendants**

Defendants admit that they, and non-party Jeffrey Miller, are co-founders, co-owners, and the only individuals of the On Demand parties. (Reply Statement of Undisputed Facts at ¶¶ 3–4, 30–131, ECF No. 277). They also admit that Saevitzon and Shandler were the CEOs of On Demand Direct Response, LLC, and Shandler was the CEO of On Demand Direct Response III, LLC. (*Id.* ¶¶ 5, 6–7). However, the mere fact that ownership and management of an LLC are accomplished by the supposed alter ego is insufficient by itself to support veil piercing without further findings. *See Lipshie v. Tracy Inv. Co.*, 566 P.2d 819, 823 (Nev. 1977) (holding that "the fact that [company 1] owned all shares of [company 2] and that the officers of [company 1 and company 2] were identical" was insufficient to satisfy the first two requirements of the alter ego doctrine). Thus, even if this element is met, that alone is insufficient to support piercing the LLC veil.

**2. Unity of Interest and Ownership**

Turning to the second part of the alter ego test, "[i]n determining whether a unity of interest exists between the individual and the [LLC], courts have looked to factors like co-mingling of funds, undercapitalization, unauthorized diversion of funds, treatment of [LLC]

assets as the individual's own, and failure to observe [LLC] formalities." *Polaris Indus. Corp. v. Kaplan*, 747 P.2d 884, 887 (Nev. 1987).  Defendants argue there is no evidence that shows a failure to observe corporate formalities, such as holding regular meetings, keeping minutes, and issuing stock certificates. (Defs.' Suppl. Br. 6:24–26).  They also state that the absence of comingling of funds or assets supports maintaining the LLC entity. (*Id.* 7:3–7).  Further, Defendants contend that undercapitalization alone is insufficient to pierce the LLC veil. (*Id.* 7:8–14).  Defendants also state that the absence of evidence showing unauthorized diversion of corporate funds for personal use supports maintaining the LLC entity. (*Id.* 7:15–19).

      Plaintiff introduces one instance where Saevitzon used On Demand Direct Response III's funds to send money to his children's private school.[2]  Indeed, a bank statement for On Demand Direct Response III shows that in March 2016 Saevitzon transferred $360 to his children's private school. (On Demand Direct Response III Bank Statement at 3, Ex. 25 to Pl.'s Suppl. Br., ECF No. 345-26).  But Plaintiff does not submit evidence that this transaction was made without following corporate procedures or that it was unauthorized, which would be necessary for this Court to find a unity of interest. *Polaris Indus. Corp. v. Kaplan*, 747 P.2d 884, 887 (Nev. 1987) (explaining that withdrawals of funds for one's own use without following corporate procedures points to a unity of interest between the individuals and the corporation).  Plaintiff also advances an argument that the On Demand parties were undercapitalized. (Pl.'s Suppl. Br. 3:20–4:8).  But even if the On Demand parties were undercapitalized, this evidence alone, paired with one instance of using LLC funds for personal use (without evidence that the transaction was unauthorized), does not satisfy the unity of interest and ownership element.  Further evidence of other factors, such as a lack of observance

---

[2] Plaintiff also attempts to establish this element by introducing evidence that Defendants used non-party LLC funds for personal use, but because those LLCs are not party to this lawsuit, that evidence is inapplicable to the Court's analysis. (*See* Pl.'s Suppl. Br. 5:8–17).

of corporate formalities, maintenance of corporate records, and unauthorized diversion of funds, would be required to satisfy this element. *See Ene*, 546 P.3d at 1237.

The Court finds that Defendants meet their initial burden of negating an essential element of Plaintiff's claim and Plaintiff fails to establish that a genuine dispute of material fact exists. Because there is insufficient evidence to satisfy an element of Nevada's alter ego test, the Court finds that Plaintiff's alter ego/pierce the veil claim fails as a matter of law.[3]

### B. Remaining Claims

Because Plaintiff's alter ego/pierce the veil claim fails as a matter of law, Plaintiff's claims for abuse of process and IIED necessarily fail as a matter of law because Plaintiff has not pierced the LLC veil. Without doing so, Plaintiff is unable to hold Defendants liable for these claims. Nev. Rev. Stat. 86.376

### IV. CONCLUSION

**IT IS HEREBY ORDERED** that summary judgment is **GRANTED** in favor of Defendants.

The Clerk of Court is kindly directed to close the case.

**DATED** this __13__ day of January, 2026.

_____
Gloria M. Navarro, District Judge
United States District Court

---

[3] The Court need not address the third element because the second element being unmet is dispositive of this claim.